IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

JUSTIN AARON,         )
                      )
     Plaintiff,     )
                      )
  v.              )      6:16-cv-01038-LSC
                      )
RICK HARRIS, *Sheriff of*   )
*Winston County, Alabama*, *et* )
*al.*,                )
                      )
     Defendants.   )

**Memorandum of Opinion**

Plaintiff Justin Aaron ("Aaron") brings claims under 42 U.S.C. § 1983 against Defendants Rick Harris ("Sheriff Harris"), the Town of Parrish, and Roderick McConico ("Police Chief McConico"), alleging that his constitutional rights were violated while he was incarcerated in both the Winston County and Town of Parrish Jails. Specifically, Aaron brings failure to protect, failure to provide adequate medical care, and supervisory liability claims against Sheriff Harris. Aaron brings failure to provide medical care and supervisory liability claims against Police Chief McConico. The sole claim against the Town of Parrish is a failure to fund claim. Presently before the Court are Sheriff Harris's Motion for Summary Judgment (Doc. 78) and the Town of Parrish and Police Chief McConico's (collectively, "Parrish Defendants")

Motion for Summary Judgment (Doc. 81). The motions have been fully briefed and are ripe for review. For the reasons stated below, Sheriff Harris's motion (doc. 78) is due to be GRANTED, and the Parrish Defendants' motion (doc. 81) is due to be GRANTED in PART and DENIED in PART.

## I. BACKGROUND[1]

On May 6, 2014, Aaron was booked into the Winston County Jail on a failure to appear warrant and placed into the general population in the jail's B-Block. Ten days later, Aaron's wrist was injured during an altercation with an unidentified inmate who accused Aaron of being a snitch. Aaron reported this injury by pressing his cell's call button and telling corrections officers that he had slipped and fallen while jumping off his bunk bed. Later that evening, Aaron was sent to Walker Baptist Hospital for treatment. Aaron's wrist was placed in a splint, and he was discharged from the hospital with instructions to schedule a follow-up appointment with an orthopedist. On May 19th, Aaron

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .") (internal quotations omitted).

went to an orthopedic group where he was told to continue wearing the wrist brace.

At some point, Sheriff Harris, the Sheriff of Winston County, spoke with Aaron regarding his injury. When Sheriff Harris asked what happened, Aaron stated that he had slipped and fallen while climbing off his bunk bed. He then asked the Sheriff if he could be moved into a different cell. Sheriff Harris responded by asking Aaron if he was having any problems. Aaron told the Sheriff that he did not "want to say anything or [name] anybody" because he did not want to be referred to as a snitch. (*See* Doc. 80-1 at 38.) The Sheriff then explained to Aaron that if he could not tell him "who [was] doing what" to notify officers of any problems by using his cell's call button. (*See id.*)

On May 24th, Aaron was attacked for a second time, by the same unidentified inmate, who this time hit Aaron in the face knocking him unconscious. When he woke up, Aaron went to the shower to rinse off the blood and then pressed the call button for a corrections officer. Aaron told the corrections officer that he had fallen in the shower, was bleeding from his eye and nose, and needed to see a doctor. The corrections officer asked whether Aaron ever had a nosebleed before and told him to stuff some tissue in his nose. Jail officials advised Aaron to see the jail nurse the following day. The jail nurse picked up Aaron's medical request slip at 1:30 PM on May

25th, and the next day, May 26, 2014, corrections officers took Aaron to medical for treatment. The nurse who assessed Aaron applied ice and gave him ibuprofen. Aaron received similar treatment on May 27, 2014.

Captain James Whitman ("Captain Whitman"), the jail administrator, then met with Aaron at medical to investigate Aaron's injury. Because Aaron's left eye was bruised and nearly swollen shut, it appeared to Captain Whitman that Aaron had been punched in the eye. However, when questioned, Aaron stated that he had slipped in the shower and hit his face on part of a nearby door. Doubting the accuracy of Aaron's explanation and as a precaution against further injury, Captain Whitman transferred Aaron from B-Block into E-Block.

On May 28, 2014, Aaron was released from the Winston County Jail for time served and transferred to the Parrish Jail. Aaron did not make any request for medical treatment during the transfer, but Aaron claims that he did when he was being booked into the Parrish Jail. The Parrish Defendants dispute Aaron's account. The parties agree that Aaron and Town of Parrish Police Chief McConico interacted at some point during Aaron's incarceration. However, they dispute the extent of McConico's knowledge of Aaron's facial injuries. During Aaron's approximately twenty-nine hour stay in the Parrish Jail, he did not receive any medical treatment. A little more than three hours

after his release from the Parrish Jail, Aaron went to the emergency room at Walker Baptist Hospital where he was diagnosed with facial fractures consistent with being struck in the eye. Walker Baptist Hospital recommended that Aaron follow up with a facial surgeon, but he contends that he did not do so because he is uninsured.

## II.    MOTION TO STRIKE

As an initial matter, the Court will address the Parrish Defendants' objections to one of Aaron's evidentiary submissions. The Parrish Defendants argue that the Court should exclude from evidence an affidavit from former Parrish Police Officer Ken Marbury ("Marbury") because Aaron failed to disclose Marbury as a potential witness. According to Federal Rule of Civil Procedure 26(a)(1), a party must "without awaiting a discovery request" disclose:

> the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, . . .

Fed. R. Civ. P. 26(a)(1)(i). Rule 26(e) provides that parties must supplement their initial disclosures when they "learn[] that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other

parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A).

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)). Factors to be considered include: (1) the importance of the testimony, (2) the reasons for the non-disclosing party's failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness is allowed to testify. *See Pete's Towing Co. v. City of Tampa, Fla.*, 378 Fed. App'x 917, 920 (11th Cir. 2010) (citing *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004)).

Aaron admits that prior to filing his Response in Opposition to the Parrish Defendants' Motion for Summary Judgment he did not disclose Marbury as a potential fact witness. Moreover, Aaron does not dispute that he failed to provide any initial disclosures to the Parrish Defendants or

mention Marbury as a potential witness in response to the Parrish Defendants' interrogatories. However, Aaron argues that this omission was completely harmless and that he would be unfairly prejudiced if the Court were to strike Marbury's affidavit from evidence.

The Court agrees with Aaron that Marbury's testimony is important to his case against Police Chief McConico. Marbury, who was employed as the Assistant Chief of Police for the Town of Parrish, testified that based on his observations of Aaron it was "obvious [that Aaron] needed medical care from a doctor." (*See* Doc. 86-4 at 3.) He also stated that he asked Police Chief McConico why someone in Aaron's condition was locked up in jail. (*See id.*) This testimony provides evidence that Aaron suffered from a serious medical need and that Police Chief McConico was aware of Aaron's injuries. Nonetheless, to determine whether Aaron is entitled to use this evidence, the Court must balance its importance with other relevant considerations.

Aaron's excuse for failing to disclose Marbury as a witness is that he did not discover that he needed Marbury's testimony until after the Parrish Defendants filed their motion for summary judgment. According to Aaron, Police Chief McConico's affidavit, which was submitted in support of that summary judgment motion, is what caused him to reach out to Marbury. Specifically, Aaron states that he realized he needed to find a witness to

rebut Police Chief McConico's testimony that Aaron said that he did not need medical treatment and that Aaron was not acting in a manner that would indicate he had a serious medical condition. The Court finds this excuse to be lacking. Although Aaron may not have known precisely what Police Chief McConico's testimony would be, it should not have come as a surprise that Police Chief McConico would minimize any injury suffered by Aaron. The crux of Aaron's claims against Police Chief McConico are that he denied Aaron medical treatment for serious injuries to his face. Thus, Aaron should have known from the outset of this case that Police Chief McConico would likely testify that Aaron's injuries did not appear serious to him.

Additionally, the Parrish Defendants have been prejudiced by Aaron's failure to timely disclose Marbury. Aaron did not disclose Marbury until after discovery had closed, so the Parrish Defendants had no opportunity to depose Marbury regarding his statements. The timing of Marbury's disclosure also prevented the Parrish Defendants from being able to offer evidence to rebut his claims in their summary judgment motion. Nevertheless, the Court considers Aaron's failure to disclose Marbury to be harmless. The Advisory Committee notes to Rule 37(c) provides several examples of harmless failures to disclose. These include "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential

witness known to all parties" and "the failure to list as a trial witness a person so listed by another party." Fed. R. Civ. P. 37 advisory committee notes (1993 Amendments, Subdivision (c)). As Aaron points out, the Parrish Defendants disclosed in their initial disclosures that "[a]ny and all employees of the Town of Parrish and/or the Parrish Police Department who had contact with the Plaintiff during his time in the Parrish jail" were likely to have discoverable information to support their defenses. (*See* Doc. 89-1 at 6.) Thus, Marbury, a Parrish Police Department employee, appears to have been a potential witness known to all of the parties.

The Parrish Defendants' knowledge that their employees likely had discoverable information regarding Aaron's time in the Town of Parrish jail mitigates the prejudice caused by Aaron's failure to disclose. Although Police Chief McConico denies discussing Aaron with Marbury, he does not dispute that Marbury was working at the Town of Parrish Jail during Aaron's incarceration. (*See* Doc. 87-2.) Therefore, based on the Parrish Defendants' initial disclosures, it appears that they had adequate notice that Marbury was a potential witness. This knowledge, coupled with the importance of Marbury's testimony, favors allowing the Marbury affidavit to be submitted into evidence. Thus, although the better practice is to disclose the names of

potential witnesses during the discovery process, the Court will not strike Marbury's affidavit due to Aaron's failure to disclose.

## III. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[2] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[2] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)).  In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## B.    Sheriff Harris

Aaron alleges that Sheriff Harris violated his constitutional rights by failing to protect him from violence and being deliberately indifferent to his medical needs. Sheriff Harris has invoked qualified immunity as a defense to both claims.

Government officials are provided complete protection by qualified immunity when sued in their individual capacities, as long as "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Circuit engages in a two-part analysis to determine whether a government official is entitled to the defense of qualified immunity. "First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citations omitted).

When determining if an official's actions were within the scope of his discretionary authority, courts consider "whether they are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v.*

*Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). An official will be found to have been acting within the scope of his discretionary authority if he was "(a) performing a legitimate job-related function (that is, pursuing a job related goal), (b) through means that were within his power to utilize." *Id.* Here, Sheriff Harris was acting within the scope of his discretionary authority at the time during which these alleged constitutional violations occurred. The constitutional injuries that Aaron complains of relate to Sheriff Harris's decisions on the housing of inmates and supervision of jail personnel. These actions fall squarely within Sheriff Harris's duties as the person responsible for the welfare of inmates at the Winston County Jail. *See* Ala. Code § 14-6-1("The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto . . . ."). Thus, the Court is satisfied that Sheriff Harris has met his burden under the first prong of the qualified immunity analysis.

Because Sheriff Harris has established that he was acting within the scope of his discretionary authority, the burden shifts to Aaron to demonstrate that Sheriff Harris is not entitled to qualified immunity. *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was

clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264 (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

      1.    Failure to Protect

While prison officials, such as Sheriff Harris, have a duty to protect inmates, "[a] prison custodian is not the guarantor of a prisoner's safety." *See Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990). To survive summary judgment on an Eighth Amendment[3] failure to protect claim, a plaintiff must produce sufficient evidence of "(1) a substantial risk of serious harm; (2) the [defendant's] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). A prison official acted with deliberate indifference if he knowingly disregarded an excessive or substantial risk to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). This knowledge requirement is only satisfied if the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and he drew that inference. *See id.*

---

[3] It is unclear whether Aaron was a pretrial detainee or a prisoner serving a sentence at the time these incidents occurred. To the extent that Aaron's status was that of a pretrial detainee, his claims are due to be analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). "However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Id.*

A plaintiff may demonstrate a substantial risk of serious harm by producing evidence that the conditions of the jail created an "excessive risk of inmate-on-inmate violence." *See Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga*., 400 F.3d 1313, 1320 (11th Cir. 2005). To succeed on a dangerous conditions claim, a plaintiff must show that he was subjected to "confinement in a prison where violence and terror reign[ed]." *See Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting *Purcell*, 400 F.3d at 1320). Aaron has not done so. While Aaron has produced evidence that there were at least three incidents of inmate against inmate assault during his incarceration, "occasional, isolated attacks by one prisoner on another" do not amount to a violation of the Eighth Amendment. *See Purcell*, 400 F.3d at 1320. Here, two of the incidents pointed to by Aaron involved him and the unidentified prisoner. As Sheriff Harris argues, this evidence falls short of demonstrating that fights were commonplace at the Winston County Jail. Moreover, the Court finds the evidence that Aaron was placed into an unsegregated jail block and that these incidents occurred out of eyesight and earshot of a guard to be insufficient to support a finding that inmates at the Winston County Jail were subjected to a "constant threat of violence." *Cf. Hale*, 50 F.3d at 1583–84 (finding that segregating inmates based on likelihood of violence and increasing monitoring of inmates would be

reasonable response once officials were subjectively aware of regularly occurring inmate-on-inmate violence).

Thus, Aaron may only proceed with his failure to protect claim if Sheriff Harris had subjective knowledge that there was a substantial risk of serious harm particular to Aaron. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099–00 (11th Cir. 2014). Aaron has failed to show that Sheriff Harris acted with deliberate indifference to a threat to his safety. After the first attack, Aaron told Sheriff Harris that he did not want to go back to his cell and requested to be moved. But Aaron never informed Sheriff Harris that his wrist injury was due to an altercation with one of his cellmates or described any threat made against him. Instead, when pressed by Sheriff Harris as to whether he was having problems with other inmates, Aaron stated that he did not "want to say anything or [name] anybody" because he did not want to be referred to as a snitch. (*See* Doc. 80-1 at 38.)

Aaron contends that Sheriff Harris's comment that Aaron should use his cell's call button if he had any more problems indicates that Sheriff Harris knew that Aaron was having trouble with another inmate and anticipated that he would continue to have problems with this inmate in the future. This statement does not provide sufficient evidence that Sheriff Harris was subjectively aware that Aaron faced a substantial risk of serious harm. At

most, it demonstrates that Sheriff Harris had a general awareness that Aaron was not getting along with his cellmates. Evidence that Sheriff Harris may have possessed a general awareness that inmates were having problems with one another does not support a claim that he acted with deliberate indifference. Instead, "[t]he known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)).

Here, Aaron has not produced evidence that Sheriff Harris was in possession of facts from which an inference could be drawn that Aaron faced a substantial risk of serious harm, much less that Sheriff Harris actually drew that inference. Because Aaron concealed the nature of his wrist injury from Sheriff Harris, Sheriff Harris had no way to evaluate the nature of Aaron's problems with his cellmates or determine whether Aaron faced any specific threat. Without evidence that Sheriff Harris was aware of a specific threat to his safety, Aaron has failed to show that Sheriff Harris's actions constituted deliberate indifference.

Moreover, even to the extent that Sheriff Harris did have some awareness of a risk of harm to Aaron, he did not respond to that risk "in an objectively unreasonable manner." *Rodriguez v. Sec'y for Dep't of Corr.*, 508

F.3d 611, 620 (11th Cir. 2007) (quoting *Cottone*, 326 F.3d at 1358). After Aaron was injured, Sheriff Harris met with Aaron and talked with him about his injuries. He then told Aaron to notify corrections officers about any problems he was having by using his cell's call button. This does not constitute deliberate indifference. To find otherwise would impermissibly allow Aaron to hold Sheriff Harris liable under the Eighth Amendment for actions that at most amounted to nothing more than negligence. *See Hughes*, 894 F.2d at 1537 ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983 . . . ."). Thus, even assuming the existence of a substantial risk of serious harm to Aaron and legal causation, Aaron's failure to protect claim against Sheriff Harris fails as a matter of law.[4]

### 2. Deliberate Indifference to Medical Needs

Aaron also brings a deliberate indifference to medical needs claim against Sheriff Harris under a supervisory liability theory.[5] To recover for

---

[4] Because Aaron has failed to establish deliberate indifference on the part of Sheriff Harris, the Court need not address the "clearly established" prong of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (noting "[i]f no constitutional right would have been violated . . . there is no necessity for further inquiries concerning qualified immunity"), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[5] In his Response in Opposition, Aaron makes clear that his deliberate indifference claim against Sheriff Harris is not brought under a theory of direct liability. (*See* Doc. 84 at 23–29.) Thus, to the extent that Aaron's amended complaint brings a deliberate indifference

deliberate indifference under § 1983, a plaintiff must establish: (1) a serious medical condition that poses a substantial risk of harm if left unattended; and (2) a prison official's deliberate indifference to that condition. *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). For a supervisor to be individually liable for a subordinate's violation of a prisoner's constitutional rights, the supervisor must have either "personally participate[d] in the alleged constitutional violation" or there must be a "causal connection between actions of the supervising official and the alleged constitutional deprivation." *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). "Under the second method, '[t]he causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" *Grey ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). The causal connection may also be established when a supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights."

---

claim against Sheriff Harris under a theory of direct liability, the Court finds that claim to be abandoned. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

*Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)).

Here, Aaron's claim for deliberate indifference is limited to the allegedly insufficient medical treatment for his facial injuries. Aaron concedes that Sheriff Harris did not personally participate in depriving him of medical treatment, but contends that his inadequate treatment was a result of improper policies or customs that should be imputed to Sheriff Harris. However, Aaron has not identified any custom or policy that led to a delay in treatment. Viewing the evidence in the light most favorable to Aaron, (1) on May 24, 2014, Aaron reported his facial injuries to a corrections officer who told him to stick tissue paper up his nose and to make a medical request the next day; (2) Aaron made the medical request on May 25, 2014 but was not treated by the jail nurse until May 26, 2014; (3) Aaron's treatment consisted of being administered ibuprofen and an icepack; and (4) Aaron received this same treatment the following day, May 27, 2014. (*See* Doc. 84 at 27–29.) While this evidence may provide some support for Aaron's contention that officials delayed his medical treatment or provided him with inadequate care, it does not demonstrate that this was due to any improper custom or policy attributable to Sheriff Harris. Instead, at most, it establishes a single instance of officials failing to promptly address an inmate's medical need.

Nor has Aaron presented sufficient evidence of widespread abuse which would put Sheriff Harris on notice that inmates' constitutional rights were being violated. Aaron has provided no evidence of how other inmates were treated when they reported injuries to Winston County Jail officials. Instead, Aaron relies solely on evidence of his individual treatment to support his deliberate indifference claim against Sheriff Harris. Under Eleventh Circuit precedent, isolated occurrences of constitutional deprivations do not establish supervisory liability. *See Grey*, 458 F.3d at 1308. Therefore, even assuming that Aaron's facial injuries constituted a serious medical need and Winston County Jail officials were deliberately indifferent to that need, Aaron has produced insufficient evidence to hold Sheriff Harris liable in his supervisory capacity. Accordingly, Sheriff Harris is entitled to summary judgment on Aaron's deliberate indifference claim.

### C.    Town of Parrish

The only claim Aaron asserts against the Town of Parrish is a claim for failure to adequately fund medical care at the Parrish Jail. The Due Process Clause of the Fourteenth Amendment (for pretrial detainees) and the Eighth Amendment of the U.S. Constitution require local governments to provide necessary medical care to incarcerated persons. *See McDowell v. Brown*, 392 F.3d 1283, 1289 & n.8 (11th Cir. 2004). To impose § 1983 liability on a

municipality for violation of this constitutional right, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.* at 1289. (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "The Supreme Court has recognized that correctional inmates 'must rely on prison authorities to treat [their] medical needs; if the authorities fail to do so, those needs will not be met.'" *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Thus, "[f]ederal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Id.* "Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985).

Aaron bases his failure to fund claim on his assertion that the Town of Parrish had an official policy to withhold the provision of medical care to Parrish Jail inmates unless its jailers subjectively determined that an inmate needed to go to the hospital. In support of the existence of this policy, Aaron cites to Police Chief McConico's interrogatory response that it was jail policy to require all inmates to fill out a medical questionnaire when booked into the

Parrish Jail and for officials to take inmates to Walker Baptist Hospital if it was determined that an inmate needed medical care. (*See* Doc. 86-2 at 7.) The Parrish Defendants admit that the Parrish Jail does not provide onsite medical treatment, but instead, sends inmates needing medical treatment to Walker Baptist Hospital. (*See* Doc. 83-2 at 3.)

This evidence is insufficient to find the Town of Parrish liable under a failure to fund cause of action. Aaron has presented no facts that would suggest that the Town of Parrish failed to provide adequate funds for inmates' medical treatment. He has also provided no evidence regarding the Town of Parrish's budget or its allocation of funds to the jail. Instead, the only evidence Aaron has provided is that inmates are taken to Walker Baptist Hospital for treatment once Parrish Jail officials determine that medical care is necessary. This evidence does not go toward whether the Town of Parrish allocated insufficient funds for the medical treatment of inmates. Without any evidence regarding the allocation of funds to the Parrish Jail, Aaron's failure to fund claim fails as a matter of law.

Moreover, Aaron has failed to show how the policy of requiring inmates that need medical care be taken to Walker Baptist Hospital caused his constitutional rights to be violated. The policy instructs jail officials to take inmates that need medical care to the hospital. It was these officials that

determined that Aaron's injuries did not require a trip to the hospital. Aaron admits as much when he states that he was not taken to the hospital because "his captors . . . turned a 'blind-eye' to obvious and serious medical needs." (*See* Doc. 86 at 23.) Thus, Aaron has not presented sufficient evidence of a causal connection between the Town of Parrish policy and the withholding of medical care. Accordingly, the Town of Parrish is entitled to summary judgment on Aaron's sole claim against it.

### D.    Police Chief McConico

Aaron claims that Police Chief McConico was deliberately indifferent to his serious medical needs under both direct and supervisory theories of liability. Like Sheriff Harris, Police Chief McConico contends that he is entitled to the defense of qualified immunity. Aaron does not dispute that Police Chief McConico was acting within the scope of his discretionary authority at the time during which these alleged constitutional violations occurred. (*See* Doc. 86 at 17.) The Court agrees that any decision made by Police Chief McConico regarding Aaron's medical care was reasonably related to his job as Town of Parrish Police Chief. Thus, Aaron bears the burden of proving that Police Chief McConico violated clearly established law. *See Cottone*, 326 F.3d at 1358.

Two components must be evaluated to determine whether Police Chief McConico's actions were unconstitutional. First, the Court must consider if there is evidence that Aaron suffered from a serious medical need; if so, the Court must also consider whether Police Chief McConico's response to that need was deliberately indifferent. *See Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation and citation omitted). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). For example, the Eleventh Circuit has recognized that broken bones and bleeding cuts constitute serious medical needs. *See Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994).

Viewing the evidence in the light most favorable to Aaron, he suffered from a serious medical need. The doctors at Walker Baptist Hospital examined Aaron and determined that he was suffering from facial fractures. (*See* Doc. 83-6.) Upon discharge, Aaron was provided with medications for pain and nausea and instructed to schedule an appointment with a facial surgeon. Moreover, there is sufficient evidence to support the conclusion that

Aaron's injury was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Farrow*, 320 F.3d at 1243. Marbury testified that based on his observations Aaron looked "messed-up bad" and had unmistakable injuries to his face. (*See* Doc. 86-4 at 3.) Captain Whitman testified that Aaron's left eye was practically swollen shut (*See* Doc. 80-3 at 3), and Parrish Police Officer Steve Yarbrough also noticed Aaron's black eye when he picked Aaron up for transfer at the Winston County Jail. (*See* Doc. 83-3 at 2.) Additionally, the record contains Aaron's testimony that his injuries caused him to bleed, swallow blood, and vomit. (*See* Doc. 83-1 at 7–8.) This evidence is sufficient to find that Aaron suffered from a serious medical need.

To prove that Police Chief McConico acted with deliberate indifference Aaron must show that he: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) engaged in conduct that was more than mere negligence. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). "An official disregards a serious risk by more than mere negligence 'when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate.'" *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280

(11th Cir. 2017) (alteration in original) (quoting *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997)).

The parties largely dispute how Police Chief McConico interacted with Aaron during his time at the Parrish Jail. What they do agree upon is that at some point Police Chief McConico personally observed Aaron's injured face. Under Aaron's version of the facts, this interaction occurred when Aaron was being taken from his cell block so a female inmate could use the showers. Aaron stated that Police Chief McConico stayed with Aaron and the other inmates "for what seemed to be at least an hour" and directly viewed his injuries. (*See* Doc. 86-3 at 3.) Further, Assistant Police Chief Marbury testified that he discussed Aaron with Police Chief McConico and asked why someone in Aaron's condition was "lock[ed] . . . up in jail." (*See* Doc. 86-4 at 3.) Thus, there is evidence that Police Chief McConico was aware of Aaron's black eye.

Additionally, though Police Chief McConico denies having subjective knowledge of Aaron's serious medical need, the Court finds that a reasonable jury could infer that he did possess this knowledge. According to Aaron, Police Chief McConico was in close proximity to Aaron for nearly an hour where he could readily observe the injuries to Aaron's face. Moreover, in his affidavit, Marbury states that he questioned Police Chief McConico's

decision to keep Aaron in the Parrish Jail and asked the Police Chief why someone in Aaron's condition was in jail. While Police Chief McConico disputes Aaron's account and points out that Aaron's Parrish Police Medical Questionnaire does not include any request for medical treatment, the Court finds that this evidence creates a genuine dispute of material fact as to whether Police Chief McConico knew that Aaron needed medical treatment. Viewing the evidence in the light most favorable to Aaron, a reasonable jury could find that Police Chief McConico simply deliberately disregarded Aaron's need for medical care.

Moreover, a reasonable jury could conclude that the failure to provide Aaron with any medical care during his twenty-nine hour incarceration at the Parrish Jail was more than mere negligence. "[T]he reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Here, the only excuse Police Chief McConico has offered for his failure to procure any medical treatment for Aaron during his incarceration is that he "did not see [Aaron] act in any manner that would indicate he had a serious medical condition that required any treatment" and he was unaware of Aaron ever asking for medical treatment. (*See* Doc. 83-2 at 3.) The Court

finds this excuse to be lacking, especially considering the fact that multiple other officials have confirmed that it was obvious that Aaron was suffering from an eye injury. There is nothing in the record that would indicate why Police Chief McConico could not have ordered that Aaron be taken to the hospital or be provided with any other type of relief. Thus, while it certainly appears that Aaron's facial injuries were not life threatening or so serious as to require something as drastic as emergency surgery, it is at least arguable that denying Aaron access to any medical treatment was constitutionally intolerable.

"The final requirement for a deliberate indifference claim is that a defendant have a causal connection to the constitutional harm." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). Police Chief McConico argues that Aaron cannot establish causation because there is no evidence that the delay in medical care caused by Aaron's incarceration in the Parrish Jail worsened the injuries to Aaron's face. As evidence of this, Police Chief McConico points out that Aaron waited a little more than three hours after being released from jail to obtain medical treatment and never did follow up with a facial surgeon. Although there is no evidence that Police Chief McConico's refusal to provide Aaron with medical treatment caused Aaron's condition to become more severe, the Eleventh Circuit has recognized that

officials' failure to treat an inmate's pain which results in needless suffering may violate an inmate's constitutional rights. *See McElligott*, 182 F.3d at 1257. Here, a reasonable jury could find that Police Chief McConico's failure to provide Aaron with any medical care caused Aaron to suffer from extreme and unnecessary pain. As such, a genuine issue of material fact exists as to whether Police Chief McConico violated Aaron's constitutional rights.

To overcome Police Chief McConico's qualified immunity defense, however, Aaron must also demonstrate that Police Chief McConico's actions violated clearly established law. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010). "A government official's conduct violates clearly established law when, at the time of the alleged conduct, the contours of the right are sufficiently clear that every 'reasonable official would have understood that what he is doing violates that right.'" *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1146 (11th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "[T]he salient question . . . is whether the state of the law at the time of an incident provided 'fair warning' to the defendants that their alleged [conduct] was unconstitutional." *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)).

At the time of Police Chief McConico's alleged constitutional violations, it was clearly established that an "unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." *Hughes*, 894 F.2d at 1538. Indeed, the Eleventh Circuit has held that even less lengthy delays than the twenty-nine hour delay at issue in this case could constitute a constitutional violation. *See, e.g., Alridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985) (finding that ignoring inmate's bleeding cut for two and a half hours may violate the constitution). Here, despite the fact that Aaron had a noticeable eye injury, he was provided no medical treatment during his nearly twenty-nine hours in the Parrish Jail. Viewing the evidence in the light most favorable to Aaron, there is no reason why Police Chief McConico did not arrange for Aaron to receive medical treatment during his incarceration. Accordingly, at this summary judgment stage, Police Chief McConico is not entitled to qualified immunity.[6]

## IV.    CONCLUSION

For the reasons stated above, Sheriff Harris's Motion for Summary Judgment (Doc. 78) is due to be GRANTED, and the Parrish Defendants'

---

[6] As Aaron has presented evidence that Police Chief McConico directly engaged in violations of his constitutional rights, Police Chief McConico is also not entitled to summary judgment on Aaron's supervisory liability claim. *See Cottone*, 326 F.3d at 1360 (noting that a supervisor may be liable under § 1983 when he personally participates in the alleged constitutional violation).

Motion for Summary Judgment (Doc. 81) is due to be GRANTED in PART and DENIED in PART. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on February 22, 2019.

_____
L. Scott Coogler
United States District Judge

194800